[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 21-14468

————————————————

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff-Appellant,

*versus*

MARCUS BROWN,
SARITA BROWN,
TASHA PRATCHER,
GLOBAL PAYMENTS, INC.,
FRONTLINE PROCESSING CORP.,

Defendants-Appellees,

CHECK & CREDIT RECOVERY, LLC,
UNIVERSAL DEBT SOLUTIONS, LLC,

2                    Opinion of the Court                    21-14468

WNY SOLUTIONS GROUP, LLC,
WNY ACCOUNT SOLUTIONS, LLC,
CHECK & CREDIT RECOVERY, LLC,
CREDIT POWER, LLC,
S PAYMENT PROCESSING & SOLUTIONS, LLC,
MOHAN BAGGA,
VARINDERJIT BAGGA,
SUMANT KHAN,

                                    Defendants-Cross Defendants-
                                                    Appellees,


GLOBAL CONNECT, LLC,
FRANCIS DAVID CORP,
d.b.a. Electronic Merchant Systems, Inc.,

                                    Defendants-Cross Claimants-
                                                    Appellees,


PATHFINDER PAYMENT SOLUTIONS, INC., et al.,

                                                    Defendants.


                      _____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:15-cv-00859-RWS

_____

Before BRANCH and GRANT, Circuit Judges, and SCHLESINGER,[*] District Judge.

BRANCH, Circuit Judge:

The Consumer Financial Protection Bureau ("CFPB") is not exempt from the rules of discovery. Nonetheless, the CFPB tried to bring a wide-ranging civil lawsuit against 18 defendants without ever being deposed. When the district court ordered the CFPB to sit for Rule 30(b)(6) depositions, the CFPB doubled down by engaging in dramatic abuse of the discovery process. The district court imposed sanctions for this misconduct.

On appeal, the CFPB maintains that it behaved properly. We conclude, however, that violating the district court's clear orders and derailing multiple depositions is nowhere near proper conduct. Thus, after careful review and with the benefit of oral argument, we affirm the district court's sanctions order.

## I.    Background

### A.    *The Underlying Lawsuit*

_____

[*] Honorable Harvey Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

The CFPB brought this action under the Consumer Financial Protection Act ("CFPA") and the Fair Debt Collection Practices Act ("FDCPA") against 18 defendants for engaging in or substantially assisting a fraudulent debt collection scheme. Essentially, the CFPB alleged that several individuals "created limited liability companies in Georgia and New York" to "perpetrate a debt-collection scheme targeting millions of consumers." Thirteen of the defendants were individuals, and their respective companies, who directly participated in the scheme.

The other five defendants—the appellees here—were not direct operators of the scheme; rather, they simply provided services to the individuals who were. One appellee, Global Connect, LLC ("Global Connect"), allegedly provided the telephone broadcast services that the individual debt collectors used to "broadcast millions of threatening and false statements to consumers." The other four appellees—Global Payments, Inc. ("Global Payments"), Pathfinder Payment Solutions, Inc. ("Pathfinder"), Frontline Processing Corp. ("Frontline"), and Electronic Merchant Systems ("EMS")—allegedly provided the processing services that were used to "withdraw funds from the consumers' accounts."

The CFPB alleged that these service-providing entities "provided substantial assistance" to the debt collectors' "unlawful conduct" and engaged in "unfair acts or practices" in violation of the CFPA. In other words, these service-providing entities knew

21-14468                Opinion of the Court                5

or should have known that their platforms were advancing the debt collectors' unlawful conduct.

### B.      The CFPB's Conduct During Discovery

The CFPB's problematic conduct began during discovery. At first, the CFPB objected on the following grounds when it was served with deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(6):[1] (1) it had "already . . . provided [the information] to [d]efendants . . . in responses to written interrogatories," (2) "[d]efendants inquire[d] into topics within the law enforcement and deliberative process privilege," and (3) "the depositions [were] an improper attempt to question [CFPB] counsel as to counsel's mental impressions and analyses." The district court overruled the objections, reasoning that Rule 30(b)(6) applies with equal force to government agencies and "factual matters are subject to inquiry even if those matters have been disclosed in interrogatory responses."

---

[1] Rule 30(b)(6) is the principal mechanism for deposing entities, including government agencies. The rule allows the entity to designate a representative who testifies on the agency's behalf. *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . . The persons designated must testify about information known or reasonably available to the organization."). In the instant case, the service-providing entities sought to use 30(b)(6) depositions to uncover the factual bases for the CFPB's claims against them.

Dissatisfied, the CFPB tried again to avoid providing a 30(b)(6) representative. This time it moved for protective orders to reduce the scope of defendants' questioning, relying on the same arguments the district court had already rejected. The court granted in part and denied in part the CFPB's motions, striking the balance that facts—including "exculpatory facts"—were fair game while questioning that "would delve into Plaintiff's trial strategy" was off limits.

### 1.    The First Deposition

During the first 30(b)(6) deposition,[2] counsel for Global Payments met heavy resistance from the CFPB. The 359-page transcript reveals that the CFPB avoided answering questions through a number of impermissible tactics.

First, the CFPB lodged more than 70 work product objections—even objecting to fact-based questions that the district court had instructed it to answer. For example, the CFPB objected to the question "[a]re you aware of any facts that Global Payments knew that the debt collector defendants . . . were collecting phantom debt?" And it objected to the yes-or-no question "[a]re you aware of any facts that [a pertinent document] was sent to Global [Payments]?" As a final and particularly egregious

---

[2] The CFPB designated Michael Godard, a supervisory investigator at the CFPB, as its 30(b)(6) representative for each deposition covered in this appeal. Godard spent "a little over 300 hours" preparing for the depositions by reviewing documents and meeting with counsel.

example,[3] to a question asking if the deponent spoke to any witnesses in the case, the CFPB objected and argued that "[t]he identity of witnesses is work product." These objections were often accompanied by an instruction for the CFPB's witness "not to answer."

Second, the CFPB equipped its witness with so-called "memory aids"[4] from which the witness read verbatim for extended periods of time. In response to one question, for example, the witness read from his memory aid for more than 40 minutes and then, after a break, continued reading for 18 minutes before the parties stipulated that he would have read another 93 pages. This filibuster-style reading occurred repeatedly. And when Global Payments's attorneys objected, the CFPB's counsel would insist that the witness needed to finish his answer: "Let him finish the answer, maybe it will be [responsive]."

Third, in response to the district court's instruction that exculpatory facts were fair game, the CFPB took the position that it had not "identified any exculpatory facts" in the entire record. One illustrative back-and-forth follows:

> [Deposing counsel]: The judge in his ruling said that
> the [CFPB] was to provide a witness who would

---

[3] There are many, many more examples in the record, but we do not include them all in the interest of conciseness.

[4] The "memory aids" were essentially lawyer-prepared scripts that were hundreds of pages in length.

testify as to all facts the plaintiff could reasonably identify as exculpatory. Are you familiar with that part of the judge's ruling in your testimony here today?

[CFPB's witness]: Yes.

[Deposing counsel]: What, if anything, did you do to identify exculpatory facts?

[CFPB's witness]: I didn't identify any.

[Deposing counsel]: So in the 300 hours that you spent preparing for this, you didn't identify a single fact that was exculpatory as to Global Payments?

. . .

[CFPB's witness]: That's correct.

> ## 2.    Telephonic Hearing with the District Court

Because Global Payments felt it was denied the opportunity to conduct a meaningful deposition—and Frontline and Pathfinder had noticed depositions for later that week—defendants alerted the district court to the CFPB's behavior. Specifically, defendants expressed concern with the CFPB's repeated work-product objections and its witness's complete reliance on memory aids. In

21-14468                Opinion of the Court                9

light of these concerns, the district court conducted a telephonic hearing with the parties.[5]

During the hearing, the district court reiterated its guidance from previous orders that the CFPB's witness must answer fact-based questions:

> I think what you do is when the question is asked, you look at what it goes to, and if it goes to an element of the claim, then that is a fair question. If it's asking the witness to analyze it beyond offering the facts[,] then you're getting out of bounds and you're arguably getting over into work product or you're getting into questions that the witness is not qualified to answer and that are subject to legitimate objections. But so long as the inquiries are into facts that are within the knowledge of the [CFPB] and that are within the scope of the notice, then I think they've got to be answered.

It also reemphasized that defendants were entitled to question the CFPB about exculpatory facts.[6] The district court also

---

[5] We appreciate that the district court did not yet have a transcript of the first deposition at the time of the hearing, so it had only the parties' finger-pointing as evidence and was unable to analyze independently the extent of the CFPB's obstructive conduct.

[6] Regarding exculpatory evidence, the district court stated:

> I believe I have ruled the defendants are entitled to question and it's exculpatory information, and I know I'm using criminal terms and we just talked about this being a civil case, but evidence that would be in the possession of the [CFPB]

indicated that memory aids were acceptable due to the voluminous record but regurgitating pre-written information would be insufficient in many cases.[7]

---

that would show that the defendants had not violated these provisions.

[7] The district court described the extent to which it would permit the CFPB's witness to use memory aids and when it would expect testimony with a "human touch":

> [N]umber one, it's okay for a witness to have these kinds of things with him or her at the time the deposition is given. It seems to me that this is a good faith effort on the part of CFPB to give what I said they had to give in denying many parts of the protective order and the rulings on the protective order, trying to make it clear that there had to be specific information given. It seems that these exhibits are, at least on their face, a good faith effort to accomplish that. At the same time, I think the witness needs to be prepared and versed, and Mr. Engel has represented in his e-mail that he does intend to have a witness who has been prepared to address these topics that require a more generalized response or a response that's more of a human touch than some listing that might be contained in the exhibits.

It continued: "[M]y expectation is that the [CFPB's] witness would answer those questions and, for lack of a better term, the human touch questions, but would be prepared to answer those and to represent the position of the CFPB."

21-14468                Opinion of the Court                11

### 3.        Subsequent 30(b)(6) Depositions

Despite having received additional instructions from the district court, the CFPB continued its obstructionist conduct during the next four depositions.[8]

To start, the CFPB continued to object on work product grounds and instruct its witness not to answer even simple fact-based, yes-or-no, and follow-up questions. A few examples are instructive.[9] The CFPB raised a work product objection to the question "does the CFPB rely on any facts to demonstrate that Frontline's practices were unfair?" The CFPB also lodged the same objection to the question "did you review any fact that leads you to the conclusion that Global Connect authored [an e-mail exhibit]?" And, after being shown an exhibit that arguably contradicted the script its witness read, the CFPB objected on work product grounds to the question "do you still believe [your testimony] was correct?" This pattern persisted throughout all four depositions.

The CFPB's witness continued to rely exclusively on memory aids, but the amount of time he spent reading was reduced because defendants' counsel resorted to incorporating into the record the portions that the witness would have otherwise read

---

[8] In the second deposition after the hearing with the district court, Pathfinder's counsel notified the CFPB that it "reserve[d] its rights to move for sanctions and other remedies available."

[9] Again, we reproduce only a few of many, many examples.

aloud. One example is sufficient to show the extent of the witness's reliance on the memory aids and why incorporation was necessary:

> [Deposing counsel]: [I]f you and your counsel don't mind, would you be willing to tell us what pages in [the underwriting document] you plan to read in providing a response to the question . . . .
>
> . . .
>
> [CFPB's witness]: So again in the underwriting document, I would start at Page 32 at the bottom, 33, 34, 35, 36, and towards the end of 37. And then as far as the memory aid, I would not include the monitoring section, which starts at Page 78. Starting with the memory aid at Page 5. I would go 5 to 78.
>
> [Deposing counsel]: Pages 5 through 78 of the memory aid?
>
> [CFPB's witness]: Correct.
>
> [Deposing counsel]: So that I'm clear, do all of the facts at Pages 5 through 78 of the memory aid [address the question]?
>
> . . .
>
> [CFPB's witness]: I don't think I can say that every fact within – on each page. I'd have to look through every fact to determine that. But I believe those pages would be generally responsive to your question, that they contain facts that would answer your question.
>
> [Deposing counsel]: Other than reading Pages 5 through 78 of [the memory aid] and Pages 32 through

37 of [the underwriting document] into the record, are you prepared to testify about facts [pertinent to the question]?

. . .

[CFPB's witness]:  Other than these documents, no.

[Deposing counsel]:  And other than reviewing the tracts – the tract of [the underwriting document] and all of [the memory aid] less monitoring provisions, are you prepared to testify today about any facts [pertinent to the question]?

. . .

[CFPB's witness]:  My preparation to testify to those questions would be contained in the memory aid or in the underwriting summary.

All in all, in each 30(b)(6) deposition, whether the CFPB's tactic was to object at every turn, instruct its witness not to answer, refuse to acknowledge any exculpatory facts, or have its witness read extended and nonresponsive answers, the CFPB tried to game the system so that nothing was accomplished.

### C.    *The District Court's Sanctions Order*

Because of the CFPB's contumacious conduct, defendants moved for sanctions pursuant to Rule 37,[10] requesting that the district court strike the CFPB's claims against them.[11]

The district court granted defendants' motions, beginning its analysis with the rules and what conduct they covered—*i.e.*, Rule 37(b) is applicable when a party fails to "obey an order to provide or permit discovery" and Rule 37(d) is applicable when a "person designated under Rule 30(b)(6)" fails to appear for that person's deposition. Under both rules, potential sanctions included "striking pleadings in whole or in part." Fed. R. Civ. P.

---

[10] Federal Rule of Civil Procedure 37 permits a district court to impose sanctions for a party's "failure to make disclosures or to cooperate in discovery." Fed. R. Civ. P. 37. Specifically, under Rule 37(b)(2)(A), a district court may issue sanctions "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) . . .—fails to obey an order to provide or permit discovery . . . ." *Id.* at 37(b)(2)(A). And, under Rule 37(d), sanctions are appropriate if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) . . . —fails, after being served with proper notice, to appear for that person's deposition . . . ." *Id.* at 37(d)(1)(A)(i).

[11] Defendants technically brought three different motions which all sought sanctions in the form of striking the claims against them. Considered together, these motions are the subject of this appeal. Pathfinder also moved for Rule 11 sanctions against the CFPB and its counsel (seeking an award of costs and attorneys' fees as well), alleging that the CFPB's claim amounted to government overreach and was frivolous. The court denied this motion, and it is not part of this appeal.

37(b)(2)(A)(iii); *see also id.* at (d)(3) ("Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).").

In its Rule 37(b) analysis (failure to obey a court order to provide or permit discovery), the court found that, despite its instructions that defendants were entitled to question the CFPB about the factual underpinnings of its claims, the CFPB "put up as much opposition as possible at every turn" through a two-pronged strategy of (1) reading from the memory aids to "bury the [d]efendants in so much information that it [could not] possibly identify, with any reasonable particularity, what support[ed] the CFPB's claims," and (2) "assert[ing] privilege objections to questions that the [c]ourt ha[d] repeatedly ordered to be answered." Because "neither form [of opposition was] proper," the district court sanctioned the CFPB under Rule 37(b), finding that the CFPB "demonstrate[d] a willful disregard [for] the [c]ourt's instructions."

The district court also found that the CFPB's witness "failed to appear" pursuant to Rule 37(d) because, even though he was physically present, he was effectively unavailable due to his inability to answer questions without memory aids and refusal to address exculpatory evidence.

Finally, because the CFPB's conduct was egregious,[12] and "the Court [was] not optimistic that reopening the depositions

---

[12] In addition to the bad faith usage of objections and memory aids, the district court also found that the CFPB's repeated insistence that there were no

would be fruitful," the district court granted defendants' motions for Rule 37 sanctions, struck all claims against the five service-providing defendants, and dismissed them from the case.

## II.    Standard of Review

"The standard of review for a Rule 37(b) dismissal is not whether the reviewing court would, as an original matter, have dismissed the action; it is whether the district court abused its discretion in dismissing the action." *Aztec Steel Co. v. Fl. Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982); *see also Marshall v. Segona*, 621 F.2d 763, 766 (5th Cir. 1980) ("The bandwidth of the District Court's power to impose Rule 37 sanctions is broad indeed. We will not interfere unless . . . there has been an abuse of discretion.").[13]   When reviewing discovery motions, "wide discretion" is proper because "[a] judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996).

If the district court applies an incorrect legal standard, fails to follow the appropriate procedures when making the relevant determination, or makes findings of fact that are clearly erroneous,

---

exculpatory facts in the voluminous record was a "bad faith attempt to frustrate the purpose of the [d]efendants' depositions."

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this Court adopted as precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

it abuses its discretion. *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1207 (11th Cir. 2014). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (quotation omitted).

## III.    Discussion

The district court dismissed the service-providing defendants after finding that the CFPB violated both Rule 37(b)—for failure to obey a court order to provide or permit discovery—and Rule 37(d)—for the witness's failure to appear at a Rule 30(b)(6) deposition. We affirm because we conclude that sanctions were clearly permitted under Rule 37(b) and the CFPB's discovery abuses were sufficiently egregious to merit dismissal; thus, the district court did not abuse its discretion.[14]  *See Aztec Steel*, 691 F.2d at 481.

### A.    *Rule 37(b) Sanctions Generally*

The CFPB argues that the district court abused its discretion in sanctioning the CFPB under Rule 37(b) because the CFPB "made all reasonable efforts" to comply with the court's unclear instructions. We conclude that the district court did not abuse its discretion in imposing Rule 37(b) sanctions against the CFPB

---

[14] We do not reach the question of whether a 30(b)(6) witness who is physically present but refuses to offer meaningful testimony has "failed to appear" pursuant to Rule 37(d).

because it repeatedly disobeyed the district court's instructions and orders regarding the Rule 30(b)(6) depositions. *See Aztec Steel*, 691 F.2d at 481.

Rule 37(b) provides: "If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b). "This rule gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders[.]" *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). "Sanctions . . . for violation of an order are only appropriate if 'the order stated in specific and clear terms what acts were required or prohibited.'" *In re Se. Banking Corp.*, 204 F.3d 1322, 1332 (11th Cir. 2000) (quoting *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993)). But "Rule 37, on its face, does not require that a court formally issue an order compelling discovery before sanctions are authorized." *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997).

Contrary to the CFPB's argument, the district court's instructions and orders were clear.[15] *See In re Se. Banking Corp.*,

---

[15] As a starting principle, district courts are not required to hold a litigant's hand and guide him through the basics of discovery. By repeatedly telling the CFPB what was expected during a deposition, the district court was already going out of its way to provide extra instruction to an off-track party. Unfortunately, the CFPB was not an unsophisticated litigant that merely

204 F.3d at 1332 (affirming sanctions that were issued after the defendant violated multiple clear discovery orders). Before the CFPB sat for the first Rule 30(b)(6) deposition, the district court considered the CFPB's initial objections *and* reconsidered those same arguments when it moved for protective orders. The district court emphasized on multiple occasions that "factual matters are subject to inquiry . . . ." For example, in ruling on one motion for a protective order, the district court narrowed a potential topic to "all facts relevant to Plaintiff's claims against Global Payments, including all facts that Plaintiff could reasonably identify as exculpatory."[16] The clear upshot was that the CFPB had to sit for depositions during which defendants were "entitled to question the CFPB about the factual underpinnings of its allegations against them." The CFPB did not misunderstand—it disagreed.

If these instructions were not enough—and they should have been—the district court reasserted these points during the telephonic hearing after the first deposition. During the hearing,

---

misunderstood the rules, but rather an arm of the federal government that sought to overrun them.

[16] The CFPB argues that the district court overreached in issuing this instruction. In its words, "it was improper for the district court to order [CFPB] to specifically identify evidence that it considered exculpatory," so it was assuredly improper to sanction the CFPB for failing to do so. The CFPB overstates its case. The district court's instruction did not ask the CFPB to hand over the keys to its case; rather, it merely reiterated that facts—*including* those that were exculpatory—were fair game and could not be hidden from the service-providing defendants during 30(b)(6) depositions.

the district court stressed that work product objections should be limited to work product concerns—"so long as the inquiries are into facts that are within the knowledge of the [CFPB] . . . they've got to be answered"—and that the CFPB's witness must do more than just read verbatim from a lawyer-prepared script—"the witness needs to be prepared and versed . . . to address these topics that require . . . a response that's more of a human touch . . . ."

Nevertheless, the CFPB again ignored these directions in subsequent depositions. The CFPB's witness continued to read—or stipulate that he would have read—canned answers from memory aids rather than offering organic answers with a "human touch." This continued refusal undermined the very purpose of a Rule 30(b)(6) deposition and rendered the practice nothing more than a glorified document production—an entirely different discovery tool with a different purpose. *See* Fed. R. Civ. P. 34. The CFPB does not have the power to decide which discovery rules it will abide by and which it will ignore.[17]

Similarly, the CFPB continued to lodge work-product objections to simple, fact-based questions. During the four depositions after the telephonic hearing (when the CFPB was given

---

[17] The CFPB asks us to credit it for preparing its witness for a significant amount of time. We are unaware of any rule or case law that recognizes preparation time as a metric of measuring compliance with the Federal Rules of Civil Procedure and it is not clear why preparation time—rather than level of preparedness exhibited during the deposition, for example—should be considered at all.

21-14468                Opinion of the Court                21

at least its third set of instructions), there were a shocking number of improper objections and instructions for its witness not to answer.[18]  To top it off, the CFPB continued to take the incredible position that exculpatory facts did not exist as to any defendant in the case.

In light of the CFPB's repeated failure to obey the district court's orders, we conclude that the district court did not abuse its discretion in imposing Rule 37(b) sanctions.  *See Aztec Steel*, 691 F.2d at 481; *Malautea*, 987 F.2d at 1542.

B.        *Dismissal as an Appropriate Sanction*

At this point, the question shifts from "should the district court have issued sanctions?" to "should the district court have issued *that* sanction?"[19]  The CFPB argues that the district court abused its discretion by imposing a sanction that was too severe.

"[D]ismissal is a severe sanction . . . ." *United States v. $239,500 in U.S. Currency*, 764 F.2d 771, 773 (11th Cir. 1985). Nonetheless, "the district court retains the discretion to dismiss a complaint where the party's conduct amounts to flagrant disregard

---

[18] In its brief, the CFPB calls our attention to the few times that it lodged a proper work product objection and/or allowed its witness to answer a fact-based question without objecting.  We think it obvious that a splash of proper conduct amidst an expansive sea of impropriety is insufficient to save the CFPB from sanctions.

[19] Again, one of the potential sanctions for a Rule 37(b) violation was "striking pleadings in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(iii).

and willful disobedience of the court's discovery orders." *Hashemi v. Campaigner Publ'ns Inc.*, 737 F.2d 1538, 1539 (11th Cir. 1984) (quotation omitted). Although the district court is always required to assess whether lesser sanctions would suffice, it is not required to explicitly say as much when the rest of its analysis makes that finding obvious. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) ("[A] dismissal *with prejudice*, . . . is an extreme sanction that may be properly imposed *only* when . . . the district court specifically finds that lesser sanctions would not suffice." (emphasis in original)); *Phipps v. Blakeney*, 8 F.3d 788, 791 (11th Cir. 1993) ("[S]ome cases speak for themselves and are clear enough without the district court adding a section to its opinion to explain why lesser sanctions were not used."). Finally, the Supreme Court has warned against viewing dismissal as too extreme when reviewed on appeal with the benefit of hindsight. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) ("There is a natural tendency on the part of reviewing courts . . . to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. . . . But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases . . . .").

Whether dismissal was an appropriate sanction does not require much additional analysis. The district court dismissed the claims against defendants only after determining that "in light of the [CFPB's] pattern of conduct in this case, [it was] not optimistic

that reopening the depositions would be fruitful." That is, the district court offered its rationale for why the severe sanction of dismissal was necessary.

We are reviewing under the abuse of discretion standard. There was no such abuse, and we decline to second-guess the district court's conclusion that reopening discovery would not be fruitful in this case that it was intimately familiar with. *Hashemi*, 737 F.2d at 1539; *Nat'l Hockey League*, 427 U.S. at 642. Finally, while the CFPB argues that dismissal was improper because the service-providing defendants were not prejudiced by its conduct, we staunchly disagree and believe the record (as reiterated throughout this opinion) speaks for itself in refuting this contention.

## IV.    Conclusion

The CFPB was determined to avoid 30(b)(6) depositions. To realize its goal, the CFPB employed tactics that the district court repeatedly forbade. As such, the CFPB clearly violated Rule 37(b) and severe sanctions were warranted. We therefore hold that the district court's sanctions order dismissing the CFPB's claims against the five appellees was not an abuse of discretion.

**AFFIRMED.**